**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SUPERHYPE TAPES, LTD., <br><br> Plaintiff, <br><br> v. <br><br> THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", <br><br> Defendants. | Case No.: 1:20-cv-01589 <br><br> Judge Elaine E. Bucklo <br><br> Magistrate Judge Sunil R. Harjani |

### DECLARATION OF PAUL VARLEY

I, Paul Varley, declare and state as follows:

1. This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

2. I am a consultant for Superhype Tapes, Ltd., ("Superhype"), which is based in the United Kingdom. I am knowledgeable about or have access to business records concerning all aspects of the brand protection operation of Superhype including, but not limited to, its trademarks, copyrights, other intellectual property, sales, on-line sales, advertising, marketing, media coverage, and associated international operations. I make this declaration from matters within my own knowledge save where otherwise stated.

3.	Plaintiff, Superhype Tapes, Ltd., is a sound recording and music publishing company founded in 1968, by members of Led Zeppelin, an internationally recognized rock band that formed in 1968 in London, England.

4.	Superhype is in the business of developing, marketing, and licensing Led Zeppelin Products, including albums, recordings, apparel, and memorabilia. The Led Zeppelin brand has found incredible success and appreciation worldwide.

5.	Superhype Tapes, Ltd. is the licensor of all Led Zeppelin products available in stores and on various e-commerce platforms, as for example, on store.ledzeppelin.com/all-products:



https://store.ledzeppelin.com/all-products

6.	Superhype Tapes, Ltd. is the owner of the trademark and copyright registrations for the Led Zeppelin Trademark and Copyrights (collectively, the "Led Zeppelin Intellectual Property (IP)"), which are covered by U.S. Trademark Registration Nos. 4,340,692, 2,212,548,

and 5,663,514 (referred to as the "Led Zeppelin Trademarks"); and U.S. Copyright Registrations Nos. RE0000767432, RE0000767430, RE0000767435, RE0000767431, RE0000864464, RE0000767434, CSN0016803, CSN0016803, TX0008510562, TX0008510571, VAu001334047, PA0001941359, V3579D644, V3579D669, V3578D670, PAu002432643, VA0000591297, TX0000303053, TX0003080509, PA0000872283, SR0000174356, PA0000922942, RE0000767433, VAu001200331, VA0002042824, V3608D159, VA0000111211, V3612D614, V3578D670, V3579D669, V3608D159, V3608D159, V3608D159, V3608D159, V3608D159, PA0001995940, TXu000769890, TX0001281713, TX0007349298, V9935D314, V3620D258, VAu000083702, VA0000473995, V9926D277, V3510D110, PA0000718030, VAu001332137, V1744P359, RE0000840976, V1740P027, RE0000840977, RE0000840975, RE0000840986, RE0000840979, RE0000840980, RE0000840983, RE0000840981, RE0000840982, RE0000840984, RE0000840978, RE0000840985, TX0006937190, 0PA0001817015, V3446D287, V9957D007, V3527D039, PA0001383869, TX0008787718, CSN0098988, CSN0098988, VA0001734853, SR0000392357, SRu000625956, SRu000625959, V3609D139, TX0006273641, SRu000447667, TX0007164062, TX0007150962, VAu001308954, VA0000971257, VA0001292295, TX0003354252, RE0000840965, RE0000840961, RE0000840963, RE0000840962, RE0000840964, RE0000840966, RE0000767443, RE0000767440, V3578D670, V3579D644, V3579D669, RE0000767441, RE0000767439, PA0000872284, RE0000767442, RE0000767438, RE0000767437, RE0000767436, V9926D277, V3510D110, PA0001927748, V3579D644, V3578D670, V9926D277, V3510D110, PA0001926616, TX0001011575, VA0000047617, TX0004757756, V9932D170, V3579D644, V9926D277, V3579D669, V3578D670, V3510D110, VA0000473967, V3612D588, V3473D415, TX0004010168, VAu001170110, VAu001170113, VAu001332953, TX0007990030, V3607D880, TX0001997258, TX0001788857, PA0000718016, SR0000626433, VAu000690000,

8

VAu001170117, V3612D620, V3612D620, V3612D620, V3612D620, V3612D620, V3612D620, V3612D620, V3612D620, V3612D620, V3612D620, V3612D620, VAu001170114, VAu001170115, TX0007600661, V3532D501, VA0002080775, TX0000514805, VAu001170118, VAu001170112, PA0000930775, and TX0007324857 (collectively, the "Led Zeppelin Copyrights").

7. The above registrations for Superhype are valid, subsisting, and in full force and effect. True and correct copies of the federal trademark registration certificates and copyright registrations for the above Led Zeppelin Trademarks and Led Zeppelin Works are attached hereto as **Exhibit 1** and **Exhibit 2**, respectively.

8. The Led Zeppelin Trademarks are distinctive and identifies the merchandise as goods from Superhype.

9. The Led Zeppelin Trademarks have been continuously used and never abandoned.

10. Superhype Tapes, Ltd. has expended time, money, and other resources in developing, advertising, and otherwise promoting the Led Zeppelin Trademarks and copyrighted works. As a result, products bearing the Led Zeppelin Trademarks are recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Superhype Tapes, Ltd.. Superhype has ensured that products bearing its IP are manufactured to the highest quality standards. As such, the recognition and goodwill associated with the brand is of incalculable and inestimable value to Superhype.

11. The success of the Led Zeppelin brand has resulted in its significant counterfeiting. Consequently, Superhype Tapes, Ltd. is implementing an anti-counterfeiting program by investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Superhype Tapes, Ltd. has identified numerous domain names

8

linked to fully interactive websites and marketplace listings on various platforms, including the Internet stores operating under the Defendant Domain Names and/or the Online Marketplace Accounts identified in Schedule "A" which is attached to the Complaint (collectively, the "Defendant Internet Stores"), which are offering for sale, selling, and importing counterfeit products in connection with the Led Zeppelin Trademarks (the "Counterfeit Led Zeppelin Products") to consumers in this Judicial District and throughout the United States. Despite Superhype enforcement efforts online, Defendants have persisted in creating the Defendant Internet Stores.

12. I perform, supervise, and/or direct investigations related to Internet-based infringement of the Led Zeppelin Trademarks. Our investigation shows that Defendants are using the Defendant Internet Stores to sell Counterfeit Led Zeppelin Products from foreign countries such as China to consumers in the U.S. and elsewhere. I, or someone working under my direction, analyzed each of the Defendant Internet Stores and determined that Counterfeit Led Zeppelin Products were being offered for sale to the United States, including Illinois. This conclusion was reached through visual inspection of the products listed for sale, the price at which the Counterfeit Led Zeppelin Products were offered for sale, other features commonly associated with websites selling counterfeit products, because Defendants offered shipping to the United States, including Illinois, and because Defendants and their websites do not conduct business with Superhype and do not have the right or authority to use the Led Zeppelin Trademarks for any reason. True and correct copies of screenshot printouts showing the active Defendant Internet Stores reviewed are attached as **Exhibit 3.**

13. Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers selling genuine Led Zeppelin Products. Many of the Defendant Internet Stores look

8

sophisticated and accept payment in U.S. dollars via credit cards, Western Union, Amazon and PayPal, among others. The Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos. Superhype has not licensed or authorized Defendants to use its Led Zeppelin Trademark, and none of the Defendants are authorized retailers of genuine Led Zeppelin Products.

14. Upon information and belief, Defendants also deceive unknowing consumers by using the Led Zeppelin IP without authorization within the content, text, and/or meta tags of their websites, in order to attract and manipulate search engines into identifying Defendants' Online Stores as legitimate websites for Led Zeppelin Products. Defendants also employ other unauthorized search engine optimization ("SEO") tactics and social media spamming so that Defendant Internet Stores show up at or near the top of relevant search results, including tactics to propel new domain names to the top of search results after others are shut down. These tactics are meant to, and are successful in, misdirecting consumers who are searching for genuine Led Zeppelin Products.

15. Defendants often go to great lengths to conceal their identities by using multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Other Defendant Domain Names often use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule "A" to the Complaint, as well as other unknown fictitious names and

addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

16. There are numerous similarities among the Defendant Internet Stores. For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, Counterfeit Led Zeppelin Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Led Zeppelin Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user- defined variables, domain redirection, lack of contact information, identically or similarly priced similar hosting services, similar name servers, and the use of the same text and images.

17. Defendants in this case, and defendants in other similar cases against online counterfeiters, use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

18. Counterfeiters such as Defendants typically operate multiple credit card

merchant accounts as well as Amazon, Alipay, WISH and/or PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Superhype Tapes, Ltd.'s enforcement efforts. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal, or similar accounts, to off-shore bank accounts outside the jurisdiction of this Court.

19. Monetary damages alone cannot adequately compensate Superhype Tapes, Ltd. for ongoing infringement because monetary damages fail to address the loss of control of and damage to Superhype Tapes, Ltd.'s reputation and goodwill. Furthermore, monetary damages are difficult, if not impossible, to completely ascertain due to the inability to fully quantify the monetary damage caused to Superhype Tapes, Ltd.'s reputation and goodwill by acts of infringement.

20. Superhype Tapes, Ltd.'s goodwill and reputation are irreparably damaged when the Led Zeppelin Trademarks are used on goods not authorized, produced, or manufactured by Superhype. Moreover, consumer brand confidence is damaged, which can result in a loss of future sales and market share. The extent of harm to Superhype's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable.

21. Superhype is further irreparably harmed by the unauthorized use of the Led Zeppelin Trademarks because counterfeiters take away Superhype's ability to control the nature and quality of products bearing the Led Zeppelin Trademarks. Loss of quality control over goods bearing the Led Zeppelin Trademarks, and, in turn, loss of control over our reputation is neither calculable nor precisely compensable.

22. The sale of Counterfeit Led Zeppelin Products bearing the Led Zeppelin Trademarks also causes consumer confusion, which weakens Led Zeppelin brand recognition and reputation. Consumers who mistakenly believe that the Counterfeit Led Zeppelin Products

8

they have purchased originated from Superhype Tapes, Ltd. will come to believe that Superhype Tapes, Ltd. offers low-quality products. Inferior quality products will result in increased skepticism and hesitance in consumers presented with genuine Led Zeppelin Products, resulting in a loss or undermining of Superhype Tapes, Ltd.'s reputation and goodwill.

23. Superhype Tapes, Ltd. is further irreparably damaged due to a loss in exclusivity. The Led Zeppelin Products are meant to be exclusive. Superhype Tapes, Ltd.'s marketing and distribution of Led Zeppelin Products are aimed at growing and sustaining sales of Led Zeppelin Products. The Led Zeppelin Trademarks are distinctive and signify to consumers that the products originate from Superhype and are manufactured to Superhype's quality standards. When counterfeiters use the Led Zeppelin Trademarks on goods without Superhype Tapes, Ltd.'s authorization, the exclusivity of Led Zeppelin Products, as well as Superhype's reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales.

24. Superhype Tapes, Ltd. will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

I declare under penalty of perjury that the foregoing is true and

correct. Executed on March 4, 2020.

*/s/ Paul Varley*
Paul Varley